J. R. Swan, J.
This case was reserved by the district court of Logan county, upon two motions :
The plaintiffs moved the court to quash the appeal, on the ground that the bond is defective. The defendant moved the court for leave to amend the bond, if defective.
A judgment was rendered in the court of common pleas of Logan county, in favor of the plaintiffs. The defendant, thereupon, gave notice of appeal, and the court fixed the amount of the bond, at five hundred dollars; and, for the purpose of perfecting the ap *85 peal to the district court, the defendant filed the following instrument, as an appeal bond :
“ George Irwin, Moses S. Edmison, Joseph' Kerr, and Peter S. Irwin, plaintiffs,

v.

The Bank oe Belleeontatne, a partnership company and eirm, not incorporated, defendants..
Logan common pleas.
Undertaking for appeal.
“Wo bind ourselves to the plaintiffs, George Irwin, Moses’S. Edmison, Joseph Kerr, and Peter S. Irwin, that the defendant, the Bank of Bellefontaine, shall pay to said plaintiffs, the damages, not exceeding five hundred dollars, which they may sustain, if default bo made by the defendant, in the condition following, to wit:
“ That the defendant, the Bank of Bellefontaine, shall abide and perform the order and judgment of the district court, within and for Dogan county, in the State of Ohio, and pay all moneys, costs, and damages which may be required of, or awarded against, the defendant by said district court.
“ June, 12, 1855. Approved by me,
“ Bond filed June 12, 1855.
“ B. R. Dureee, [seal.]
“P. S. Howe, =seal.]
“Anson Brown, [seal.]"
Jas. Leister, Clerk."
Jas. Leister,
“ Clerk District Court.”
*The statute in relation to appeals is as follows (Swan’s [85 Rev. Stat. 717, sec. 3):
“In all cases in which the judgment or decree is personal against any party for the payment of money only, the penalty of the appeal bond shall be double the amount of such judgment or decre.e; in all other cases, including cases in which the judgment or- decree is against any party for nominal damages and costs, or for costs only, the court shall, at the rendition of the judgment or decree, ascertain and fix the penalty of the appeal bond, to be given in the event of an appeal, at such reasonable amount as shall in the opinion of the court be sufficient to cover any probable- loss, damage, or injury, which the other party or parties may sustain by the delay, and the costs and damages which may be awarded in the appellate court. Each appeal bond shall be payable to the adverse party, or otherwise, as may be directed by the court, where the conflicting interest of the parties require it; and shall be subject to a condition, to the effect that the party appealing shall abide and perform the order and judgment of the appellate court; and shall pay all moneys, *86 ■costs, and damages, which may be required of or awarded against .•said party by such court.”
That the instrument filed as an appeal bond is substantially defective, we entertain no doubt; and the appeal must be quashed, nnless the court have power to grant leave to amend.
In 1834, the Supreme Court, in the case of Bradley v. Smith, 6 Ohio, 490, say: “It has been repeatedly decided that the appeal bond, in due time and form, was necessary, under our system, to remove a cause by appeal from the common pleas; and whatever may ■he our individual opinions upon the expediency of those decisions, they 86] have *been made and acquiesced in, and it is improper for us to change them.”
In 1835 the general assembly interposed, and authorized a new .appeal bond to be taken, if upon exception the bond first filed should be found to be defective in form, or in any other respect. Swan’s Stat. 686. This law remained in force until repealed by the code, ■section 606.
It is'claimed that, notwithstanding the repeal of this law of 1835, by the code, section 6 of the act of April 30, 1852 (Swan’s Rev. Stat. 26), which preserves all remedies for suitors not inconsistent with the code, prevents the repealing clause of the code from operating upon the act of 1835. We do not think so. If it had been intended to save the act of 1835, the code would not have repealed it without some saving provision. It is much more reasonable to suppose that the code itself would contain some provision as á substitute for so salutary a law as the act of 1835.
The code provides that a mistake, in any respect, in any pro-needing, may be amended. Swan’s Rev. Stat. 641.
The provision is as follows:
“Sec. 641. The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking- out the name ■of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. And whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this ■code, the court may permit the same to be made conformable thereto, by amendment.”
*87, 88 The code requires its provisions to be liberally construed, with ^view to promote its object and assist the parties in obtain- [87 ing justice. Code, sec. 2. In adopting a new system of pleading’ and practice, and at the same time to give a narrow and rigid construction to the rules in regard to amendments, would not only be unwise and unjust to suitors, but contrary to the main object and general spirit of the code. Prominent among the objects of the code was to prevent the rights of a suitor, or the merits of his cause, from being sacrificed to technical rules, or to the omissions or mistakes of his attorney; hence the new rules, to test what is material and what is not, in pleading; and hence the section of the code in regard to the correction of mistakes, before and after judgment.
Is the filing an apjjeal bond a proceeding? The word is generally applicable to any step taken by a suitor to obtain the interposition or action of a court. Steps taken, by which the judgment of a court is vacated, and the cause taken to, and the appearance of the parties effected in another tribunal, is a proceeding, and a very important one, in the progress of a civil action. It is as clearly a proceeding by which the suitor takes steps to prosecute his action, or defense in an appellate court, as is the suing out of process at the commencement of an action, or the filing a petition in error with process served. Besides, the term proceeding is used in the section of the code referred to, to distinguish all other steps taken in an action from those embraced in the term pleading.
It is claimed that this provision of the code having been adopted in substance from the code of the State of Now York, and the courts of that state having determined, before the adoption of our code, that an appeal bond could not, under that provision, be amended, it is to be presumed that the code commissioners and general assembly adopted the provision with its construction. The New York decisions *upon th is question, however, like many [88 others under the code, are contradictoi’y. These decisions are very intelligibly stated in a note to Voorhies’ New York Code, thus:
“ It was held, at one time, that, although the court had power, by the revised statutes (2 Rev. St. 556, sec. 34), to amend a bond given on appeal, on'the application of the obligees, yet an undertaking under the code could not be so amended ; that it was not a ‘pleading or proceeding ’ within the section. Langley v. Warner, 1 Code, 111; 3 Pr. 363; and that, at most, it could only be amended *89 on the application of the sureties. Ib. It was afterward held that the undertaking, in substance and legal effect, did not differ from the appeal bond required by the revised statutes, and was a. ‘ proceeding ’ within the meaning of that word in this section, and might be amended in furtherance of justice. Wilson v. Allen, 3 Pr. 369.
“And leave was granted to amend the undertaking in that case with the written consent of the sureties, to be annexed to and filed with the amended undertaking. And see Burns v. Robbins, 1 Code, 62.”
We doubt not our code commissioners had before them Yoorhies’ notes’to the New York code; and they would, surely, conclude-from this note, that a defective appeal bond could be amended under this section of our code, and would, under that belief, repeal the act of 1835.
The counsel for the defendant insists, that the case of Langley v. Warner, above referred to, is the better law; inasmuch as it was-decided by the court of appeals. However this may be, the subsequent decision seems to us founded on more satisfactory reasons; and we are not disposed to treat with more respect the decisions of the courts of New York, than seems to be entertained by their own tribunals. Indeed, the contradictory decisions, and, sometimes, 89] the manifest misconstructions of the code by the ^courts of New York, have shaken our confidence in their determinations, and rendered their decisions thereon of little weight, upon the construction of our code.
We are of opinion, that the steps taken to perfect an appeal is a proceeding; and that if a mistake be made, the section of the code under consideration, authorizes the court to permit the mistake to-be corrected.
The undertaking filed in this case is not a bond, but rather a covenant in the nature of a guaranty.
It is claimed that it is so defective, and the mistakes therein so-gross, that no amendment can be allowed; that, as the instrument is not a bond, there is nothing to amend by.
If this position be correct, an instrument in accordance with the statute, but omitting, by accident, a scrawl seal to the signatures, would be too defective for correction, it not being a bond. This is too narrow a construction of the power to amend. The code authorizes an amendment when the mistake goes to the substance of the *90 pleadings or proceedings. It further authorizes an amendment of a mistake in any respect. Broader and more efficient language could hardly have been used to vest this power. The only limit seems to be to cases where an amendment would not be in furtherance of justice. While, on the one hand, courts will not visit upon :a suitor the mistakes of his attorney, by throwing his case out of court, they will, at the same time, carefully protect the party who objects to a defect in pleadings or proceedings from, suffering any unreasonable delay or injustice by the correction of mistakes. Cases, undoubtedly, will occur where it will not be in furtherance of justice, but a manifest and clear encouragement of a litigious spirit to permit an amendment; and probably, in such cases, the court will not interpose. Where, too, the defect in the proceeding is so gross, or is committed under such circumstances, as to indicate that the defect itself was *designed, and not simply a mistake, [90 the court would probably refuse permission to amend; for in such case no mistake has in fact been made. But in this; and in all other cases, we commit ourselves to nothing but the law upon the facts before us. We leave it to elementary writers, to comment upon the code authoritatively, and to eliminate rules from construction. Law drawn from a great number of cases, each settling a single question argued and considered in court, and practically applied to the ever-shifting circumstances of business, is better and •safer, than any theories or judicial abstract rules, even when inspired'by the wisdom of the bench. The construction of the code, like all just and practical rules of law, must be settled by cases as they arise, to make it work well and wisely.
The defendant in this case will have leave to amend within sixty -days, the defective instrument, with the written consent of the sureties to be annexed to, and filed with, the.amended appeal bond; or the defendant may file in the district court, by way of amendment, •a new appeal bond, approved by the clerk of that court.
Bartley, C. J., and Brinkerhoff and Scott, JJ., concurred.
Bowen, J., having formerly been of counsel in this case, did not participate in its decision.